**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Marisol P.Q.,

         Petitioner,

v.

Pamela Bondi, *Attorney General of the United States*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Todd M. Lyons*, Acting Director of Immigration and Customs Enforcement*; and David Easterwood*, Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

         Respondents.

Case No. 26-cv-1055 (MJD/DJF)

**ORDER AND**
**REPORT AND**
**RECOMMENDATION**

This matter is before the Court on Petitioner Marisol P.Q.'s[1] *Verified Petition for Writ of Habeas Corpus* (ECF No. 1) ("Petition") and *Motion for Expedited Discovery* (ECF No. 4) ("Motion"). For the reasons stated below, the Court recommends that the Petition be granted and grants the Motion in part.

**BACKGROUND**

Marisol is a citizen of Colombia, who fled that country to seek asylum in the United States. (ECF No. 1 at 4.) She is not an "illegal alien." Upon entering the United States on July 27, 2022, she immediately surrendered herself to immigration authorities in San Diego, California. (*Id.*) She "was released from custody shortly thereafter in early August 2022." (*Id.*) She later filed an asylum application, which remains pending, and received a work permit in September 2023. (*Id.*) Since her arrival she has built a life here in the United States. She lives in Burnsville, Minnesota, where she

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in immigration matters.

raised her adopted daughter and cares for her six-year-old grandson. (*Id.*) She maintains steady employment at a local shampoo factory. (*Id.*) She has no criminal record, has never been to immigration or criminal court, and is not subject to any deportation order. (*Id.*) The record before this Court is devoid of any evidence to suggest that she has ever violated any law.

Notwithstanding Marisol's compliance with the laws of this country, on February 4, 2026, United States Immigration and Customs Enforcement ("ICE") officers arrested her while she attended a routine immigration appointment and informed her that she would be transferred to Texas "as early as the following day." (*Id.* at 4-5.) She filed her Petition that same day. (*Id.* at 15.) The presiding judge in this case, the Honorable Judge Michael J. Davis, entered an Order to Show Cause the very next day, February 5, 2026, directing Respondents[2] to respond to the Petition. (ECF No. 3 at 1-2.) In light of what has now become a familiar and repeated pattern in this District of Respondents removing detainees from Minnesota immediately upon their arrest and depriving them of access to this Court, their families and their attorneys (*see, e.g.*, ECF No. 4 at 1, 4), Judge Davis further affirmatively concluded that the Court maintains habeas jurisdiction over the Petition because "jurisdiction attached at the time of [Marisol's] apprehension in this District" and because "[t]hat jurisdiction is not defeated by any subsequent decision by Respondents to transfer [Marisol] to another state." (*Id.* at 2.) Judge Davis additionally held that to allow jurisdiction to be determined otherwise "would permit the Government to determine the forum for judicial review through its own logistics." (*Id.* at 3.) Judge Davis's order enjoined Respondents from removing Marisol from the District of Minnesota and ordered Respondents to return Marisol to the District if she had already been removed. (*Id.*)

---

[2] Respondents are various federal officials responsible for enforcing the nation's immigration laws and who control Marisol's detention in and outside of Minnesota. (ECF No. 1 at 3-4.)

Marisol's attorney, John Hayden, immediately went to the Whipple Federal Building in Fort Snelling, Minnesota and presented Judge Davis's order to immigration officers. (ECF No. 5 at 2.) Mr. Hayden believed that Marisol would be housed there, as have countless other noncitizens who have been detained in the Twin Cities area in recent months. (ECF No. 1 at 3, 5.) The immigration officers informed him that Marisol had already been transferred to El Paso, Texas, and that she had never been housed at the Whipple Federal Building. (ECF No. 5 at 2.)

Mr. Hayden filed the Motion upon learning of Marisol's transfer, seeking the following documents: (1.) transportation records detailing Marisol's movement from her arrest to her transfer to El Paso, Texas; (2.) the names of individuals who were involved in her transfer out of Minnesota; (3.) all records concerning Marisol's physical custody and location since her arrest; (4.) all "internal memoranda, directives, bulletins, policy statements, operational guidance, or standing orders" related to rapid transfers of detainees like Marisol; (5.) all communications between individuals responsible for Marisol's custody and transfer related to her custody and transfer; and (6.) all records concerning any air transportation services that relate to Marisol's transfer. (ECF No. 4 at 5-6.)

On February 7, 2026, in response to the Motion, Respondents informed the Court that they had transferred Marisol that day to an unspecified location in Minnesota. (ECF No. 10.)

## DISCUSSION

### I.      The Petition Should be Granted.

Marisol's Petition asks the Court to issue a writ of habeas corpus ordering Respondents to release her immediately, or in the alternative, afford her a bond hearing. (*Id.* at 14.) She argues Respondents' authority to detain noncitizens such as herself, who are arrested inside U.S. borders, falls under 8 U.S.C. § 1226(a), which requires a warrant before detention and provides detainees with the right to a bond hearing. (*Id.* at 7-8, 12-13.) Respondents argue that detention of individuals

such as Petitioner falls under 8 U.S.C. § 1225(b)(2), which does not require a warrant and unequivocally mandates detention.  (ECF No. 8.)

This is one of numerous recent cases challenging the application of 8 U.S.C. § 1225(b)(2) to noncitizens who have been detained after living in the United States for many months, years, and sometimes decades.  Judge Davis has previously held that, because such individuals are not "seeking admission," *see* 8 U.S.C. 1225(b)(2), that provision does not apply to them.  *See Beltran v. Bondi*, 25-cv-4604 (MJD/DTS), 2025 WL 3719856 (D. Minn. Dec. 23, 2025).  The undersigned agrees and accordingly concludes that Marisol is subject to the detention provisions of Section 1226(a), not Section 1225(b)(2).

Moreover, even if the Court were to find Respondents' interpretation of the applicable statutes persuasive, it would recommend granting the Petition in this case.  The Order to Show Cause explicitly directed Respondents to file an answer to Marisol's Petition and include "[s]uch affidavits and exhibits as are needed to establish the lawfulness … of Petitioner's detention in light of the issues raised in the habeas petition."  (ECF No. 3 at 1.)  They have not even attempted to meet this burden.  Respondents' brief consists entirely of a one-paragraph statement citing to another pending case, with no reference whatsoever to the facts of *this* case.  They have proffered no affidavits, declarations or exhibits related to Marisol's arrival in the United States, subsequent immigration proceedings, arrest or detention.  The entirety of their discussion of the facts consists of the statement that "[t]his petition raises legal and factual issues similar to those in prior habeas petitions."  (ECF No. 8.)  But they offer no grounds for the conclusory statement that it is "similar" to other petitions, and do not point to anything in the record that suggests her detention is lawful. Leaving issues of statutory interpretation aside, Respondents' complete and utter failure to produce evidence supporting *any* ground to detain Marisol is reason enough alone to grant her Petition.

Furthermore, as noted in the Petition, "[i]ssuance of a warrant is a necessary condition" precedent for detention under Section 1226(a). *Ahmed M. v. Bondi*, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026). Failure to satisfy this requirement is grounds for the immediate release of an individual detained under Section 1226(a), *see Ahmed M.*, 2026 WL 25627, at *3; *Juan S.R. v. Bondi*, 26-cv-5 (PJS/LIB) (D. Minn. Jan. 12, 2026) (ECF No. 8); *Byron V.G. v. Bondi*, 26-cv-99 (KMM/DJF) (D. Minn. Jan. 15, 2026) (ECF No. 8). Respondents did not include a warrant with their answer, nor did they even suggest such a warrant exists. In the absence of any warrant as required by Section 1226(a), the Court recommends Respondents be ordered to release Marisol immediately.

The Court anticipates Respondents will object to this recommendation on the ground that this matter is now moot. The problem with that argument is that, as of this filing, Respondents have failed to produce any evidence to support that contention. Respondents filed a Response on February 8, 2026, stating that this matter is now moot because Petitioner was released early that morning at 1:10 a.m. (ECF No. 11.) But Marisol's counsel replied that same day and raised a question as to whether the person released was, in fact, the Petitioner in this case, or whether Respondents may have confused her with another person. (ECF No. 12 at 2-3.) Observing that Respondents made their claim in a brief that was unsupported by a declaration or any documentary evidence, the Court thereafter ordered them to file, by noon on February 9, 2026, copies of "the internal release order or other documents establishing that Petitioner was in fact released as Respondents have stated." (ECF No. 14.) Respondents have failed to meet that deadline, and despite follow-up email communications with the Court, they still have not provided supporting documents as ordered. The Court is cognizant of the extraordinary time pressure Respondents' counsel are presently under given the volume of cases that have flooded into the Office of the United

States Attorney in this District. But the Court is also aware of recent cases in which the Court was informed by attorneys in that office that a habeas petitioner was released, only to later learn counsel's representation was false. *See, e.g.*, *Manuel Gustavo N.M. v. Noem*, 26-cv-224 (MJD/DJF) (D. Minn. Jan. 23, 2026) (ECF No. 7 at 3). So, the Court can no longer rely solely on counsel's representations. And while the Court's timeframe for Respondents to provide support was brief, the Court remains concerned that Marisol may still be subjected to unlawful detention. Moreover, the brevity of the Court's timeline should not present a significant obstacle because, before Respondents represented to the Court that Marisol was released, they *already* should have been in possession of documents or other information supporting the truth of that representation. For these reasons, and until Respondents file support for their claim that Marisol was released, the Court finds this matter is not moot.

Given the expedited nature of these proceedings, the Court is altering the standard timelines for Respondents to file objections to the recommendation that the Petition be granted. *See* L.R. 72.2(b)(1) ("A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, *unless the court sets a different deadline*.") (emphasis added). Respondents must file any objection to this Court's recommendation on or before **February 12, 2026**. Marisol may file a response to any objections on or before **February 14, 2026**.

## II.     The Discovery Motion is Granted in Part.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Usually, a petitioner's access to discovery is regulated by Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), which states, "A judge may, for good cause,

authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."

Courts have previously addressed what constitutes "good cause" in the context of requests for discovery related to a habeas petitioner's underlying claims. These courts have held that, to determine whether a petitioner has established "good cause" under Rule 6, "a habeas court must identify the essential elements of the petitioner's substantive claim, evaluate whether specific allegations show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that [she] is entitled to relief, and, if the petitioner has made such allegations, provide the necessary facilities and procedures for an adequate inquiry." *Newton v. Kemna*, 354 F.3d 776, 783 (8th Cir. 2004) (citation modified) (citing *Bracy*, 520 U.S. at 904).

In contrast here, however, Marisol's Motion does not seek discovery to support her substantive claims; it seeks discovery to "determine the error, neglect, or evil purpose behind [her] immediate displacement to a border facility 1,200 miles away" and to determine her "current physical location and custodial status to ensure compliance with judicial orders." (ECF No. 4 at 2-3.) In other words, the Motion seeks discovery to determine whether Respondents: (1.) engaged in abusive forum selection; and (2.) failed to comply with Judge Davis's order to keep Marisol in the District of Minnesota.[3]

---

[3] In their brief response to the Motion, Respondents argue the Motion is moot because they have now returned Marisol to the District of Minnesota. (ECF No. 8 at 1-2; ECF No. 10.) But Respondents miss the mark for two reasons. First, as previously discussed, Respondents have failed to substantiate their claim that Marisol has been returned to Minnesota and released. Second, Respondents appear to assume that the only purpose of the request is to establish whether this Court has jurisdiction to adjudicate the Petition. The Motion does not seek information solely to establish jurisdiction, rather, it seeks information to determine whether Respondents complied with the Court's order and whether Marisol was intentionally deprived of access to her attorney. (*See* ECF No. 9, "The institutional integrity of this Court requires a full accounting of how a resident who voluntarily attended a routine appointment was whisked away to a border facility without access to family, counsel, or a medicine cabinet.").

The Court must therefore discern whether it has authority to order such discovery. The Court concludes that it does. "Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (citation modified). "That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* Although the Habeas Rules establish the regular procedural rules in habeas proceedings, they cannot be understood to divest federal courts of the powers inherently vested in them "by their very creation." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

The Court concludes the circumstances warrant the Court's exercise of its inherent powers to determine whether Respondents have engaged in sanctionable conduct by removing Marisol from the District of Minnesota immediately upon her arrest. There are several reasons that this action may be sanctionable.

First, Marisol's removal may constitute an attempt to abuse the judicial process through forum shopping. A habeas petition must: (1.) allege "the name of the person who has custody of [her] and by virtue of what claim or authority, if known", 28 U.S.C. § 2242; and (2.) "be filed in the district of confinement." *Tah L. v. Trump*, 2026 WL 184524, at *3 (D. Minn. Jan. 19, 2026). The purpose of these requirements is to prevent forum shopping by a habeas petitioner. *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). But what is good for the goose is good for the gander. The government also may not engage in activities whose primary purpose is to deprive a court of jurisdiction because of the likelihood that its detention of an individual will be deemed unlawful. *See Tah L.*, 2026 WL 184524, at *3 (collecting cases), *report and recommendation adopted as modified sub nom.*, *Lah v. Bondi*, 2026 WL 184529, at *1 (D. Minn. Jan. 23, 2026). Nonetheless, Respondents have engaged in a well-documented pattern of immediately removing detainees from

the District of Minnesota upon their arrest. *See Gabriel A.H.L. v. Noem*, No. 26-cv-860 (JRT/EMB) (D. Minn. Feb. 6, 2026) (ECF No. 6 at 3-6); *Yeison L. v. Bondi*, No. 26-CV-0147 (PJS/EMB) (ECF No. 9 at 2); *Joy C. v. Easterwood*, No. 26-cv-394 (PJS/DTS) (D. Minn. Jan. 21, 2026) (ECF No. 5 at 2-3); *Botir B. v. Bondi*, 26-cv-130 (LMP/DJF) (D. Minn. Jan. 15, 2026) (ECF No. 8 at 1-2, 3); *Abdiselan A.A. v. Bondi*, 26-cv-358 (JRT/ECW) (D. Minn. Jan. 21, 2026) (ECF No. 9). If these transfers are for the purpose of engaging in forum selection, they constitute an "abuse of the judicial process" and are improper.

Second, the record suggests that Respondents may have moved Marisol outside the District of Minnesota in contravention of Judge Davis's injunction against doing so. A failure to comply with judicial orders is plainly sanctionable conduct. *See Shilitani v. United States*, 384 U.S. 364, 370 (1966) ("There is no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."); *Chambers*, 501 U.S. at 45 ("[A] court may assess attorney's fees as a sanction for the willful disobedience of a court order."). Moreover, Respondents have demonstrated a recent propensity to ignore court orders. *See Juan T.R. v. Noem*, No. 26-cv-107 (PJS/DLM) (D. Minn. Jan. 28, 2026) (ECF Nos. 10, 10-1) (listing 96 orders Respondents have violated); *see also Gauman v. Bondi*, 26-cv-603 (JWB/LIB) (D. Minn. Feb. 4, 2026) (ECF No. 19) (show cause hearing transcript describing in detail the unsuccessful efforts of *Respondents' own lawyer* to secure their compliance with court orders). Though Respondents reportedly removed Marisol from this District before Mr. Hayden brought Judge Davis's order to the attention of immigration officers, judicial orders are effective the moment they are filed and docketed, not when opposing counsel delivers them. *See Georcely v. Ashcroft*, 375 F.3d 45, 48 (1st Cir. 2004) (citing *United States v. Fiorelli*, 337 F.3d 282, 287 (3d Cir. 2003)).

Finally, the Court is concerned that Respondents may be moving petitioners like Marisol to

remote locations to limit their access to counsel.  This kind of abusive gamesmanship runs afoul of foundational principles of fundamental fairness in the American judicial system.  *See In re Guantanamo Bay Detainee Continued Access to Counsel*, 892 F. Supp. 2d 8, 15 (D.D.C. 2012) (finding deprivation of access to counsel seriously handicaps detainees seeking to prosecute habeas claims); *see also Al Odah v. United States*, 346 F. Supp. 2d 1, 8-9 (D.D.C. 2004) (holding that government procedures may not inappropriately burden a habeas petitioner's attorney-client relationship).

Though the facts of this case and the pattern the Court has observed raise the above-stated concerns, a determination as to whether Marisol's removal was improper cannot be made in the absence of further discovery.  Without discovery, the Court cannot conclude with adequate certainty whether Marisol's transfer was part of an intentional scheme to forum shop and deprive her of counsel, or instead motivated by reasonable considerations.  The Court therefore grants the Motion so that the Court may fairly assess whether Respondents have engaged in sanctionable conduct and fashion an appropriate sanction if one is merited.  *See Chambers*, 501 U.S. at 44-45 ("Because of their very potency, inherent powers must be exercised with restraint and discretion.  A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.").

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.     Petitioner Marisol P.Q.'s *Verified Petition for Writ of Habeas Corpus* (ECF No. 1) be **GRANTED IN PART AND DENIED IN PART**.

2. Respondents be ordered to release Petitioner Marisol P.Q. from custody:

   A. As soon as practicable;

   B. Inside the State of Minnesota;

   C. At a safe time and place communicated in advance to counsel; and

   D. With **_all_** of Petitioner's personal effects in Respondents' possession, such as driver's license, immigration papers, passport, cell phone, and keys; and

3. If the Petition is granted, Petitioner be directed that any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within **21 days** of entry of judgment, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted under that statute.

3. The remainder of Petitioner Marisol P.Q.'s Petition be **DENIED WITHOUT PREJUDICE**.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Petitioner Marisol P.Q.'s *Motion for Expedited Discovery* (ECF No. 4) is **GRANTED IN PART**.

2. Respondents are directed to **file** the following documents on or before **February 17, 2026**:

   A. All records, logs, manifests, flight documents, or transportation records detailing the movement of Petitioner from Minnesota on February 4, 2026, through her arrival in El Paso, Texas, including identification of all interim

stops, holding locations, and detention facilities.

B.    Any inventories or other records documenting personal property seized from Petitioner at the time of her arrest or upon booking at any detention facility.

C.    The names, titles, and duty stations of all ICE, ERO, DHS, or contractor personnel involved in Petitioner's removal from and return to the District of Minnesota, including personnel who authorized, approved, directed, or executed Petitioner's removal from Minnesota and any chain-of-command approvals.

D.    All records reflecting Petitioner's physical custody and location from the moment of her arrest on February 4, 2026, including booking records, intake logs, holding-room assignments and transfer paperwork.

E.    Release orders or other documents establishing the date, time and location of Petitioner's release, the personnel involved in her release, and the personal property returned to her at that time if she was, in fact, released.

F.    All internal memoranda, directives, bulletins, policy statements, operational guidance, standing orders or email communications—whether national, regional, or field-office specific—governing or referencing policies or routine practices concerning:

    i.    Rapid transfer or removal of detainees following arrest;

    ii.    Transfers executed prior to judicial review or service of court orders;

    iii.    Transfers intended to relocate detainees outside the District of Minnesota; or

iv.      Procedures for responding to, delaying, or avoiding habeas filings, stay orders, or court jurisdiction.

Dated: February 10, 2026                    *s/ Dulce J. Foster*
                                                  Dulce J. Foster
                                                  United States Magistrate Judge

## NOTICE

### Report & Recommendation

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  For the reasons previously stated, Respondents must file any objection to this Report and Recommendation on or before **February 12, 2026**.  Petitioner may file a response to any objections on or before **February 14, 2026**.

### Order

**Filing Objections**: This Order is not appealable to the Eighth Circuit Court of Appeals until the conclusion of this matter.

Under Local Rule 72.2(a)(1), "a party may file and serve written objections to the order within 14 days after being served a copy" of the order.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(a)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).