**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Marisol P.Q.,

Petitioner,

v.

Todd Blanche, et al.,[1]

Respondents.

**MEMORANDUM AND ORDER ON PETITIONER'S MOTION FOR ATTORNEYS' FEES**

Civil File No. 26-1055 (MJD/DJF)

John Hayden, Quantum Lex PA, Counsel for Petitioner.

David W. Fuller, Assistant United States Attorney, Counsel for Respondents.

## I. INTRODUCTION

Before the Court is Petitioner's Motion for Attorneys' Fees and Costs Pursuant to the Equal Access to Justice Act ("EAJA"). For the following reasons, the motion is granted.

## II. BACKGROUND

On February 4, 2026, Petitioner, a citizen of Columbia with a pending asylum claim, filed a petition for writ of habeas corpus asking the Court to order Respondents to release her from custody. (Doc. 1.) Petitioner claimed that

[1] Todd Blanche is automatically substituted for Pam Bondi. Fed. R. Civ. P. 25(d).

Respondents had subjected her to mandatory detention under 8 U.S.C. § 1225(b)(2) in violation of the law, arguing that she was not "seeking admission" to the United States because she had been detained after living in the country since July 2022. Petitioner argued that because she was not seeking admission, her detention was properly classified under 8 U.S.C. § 1226(a), which requires issuance of a warrant as a condition precedent for detention.

On February 5, 2026, the Court issued an Order to Show Cause ("OSC") that, among other things, stated that habeas jurisdiction attached at the moment of Petitioner's apprehension in Minnesota. (Doc. 3.) The OSC enjoined Respondents from removing Petitioner from the District of Minnesota until a final decision had been made on the habeas petition. (Id.) Despite this order, Respondents transferred Petitioner to El Paso, Texas before her attorney ("Counsel") was even able to serve the Court's order. (Doc. 35 at 2.) In fact, when Counsel presented the OSC to officers at the Whipple Federal Building, Counsel was not only told that Petitioner "was already sent to El Paso," but also that she had never been at Whipple. (Doc. 4 (Pet. Mot. Expedited Disc.) at 1-2.) Therefore, on February 6, Counsel filed a motion for expedited discovery, arguing that discovery was necessary to determine the "error, neglect, or evil

purpose" behind the transfer of Petitioner to a "border facility 1,200 miles away from her home and her grandchild." (Id. at 2 (quoting Harris v. Nelson, 394 U.S. 286, 292 (1969)).)

On February 7, 2026, Respondents filed a status report stating that Petitioner was being returned to an unspecified location in Minnesota. (Doc. 10.) The next day, Respondents filed their second response to the petition for habeas corpus, arguing that the case was moot because Petitioner had been released from the Whipple Building at 1:10 a.m. that morning. (Doc. 11.) The same day, Counsel replied that "[v]acating a grandmother from federal custody into the Minnesota night without notice or transportation is a grave safety risk, not a valid legal remedy," especially when the Court had ordered Petitioner's "return," not her discharge from custody. (Doc. 12 at 1-2.) Counsel also posited that it was possible that Respondents were confusing Petitioner with another one of his clients. (Id. at 2.) The Court ordered Respondents to produce internal documents related to the release; to confirm that Petitioner was released with proper winter outerwear; and to confirm that she was provided a telephone and sufficient funds to arrange for transportation home. (Doc. 14.)

On February 10, Magistrate Judge Dulce Foster issued a Report and Recommendation recommending that the petition be granted because Petitioner was subject to the detention provisions of 8 U.S.C. § 1226(a), rather than § 1225(b)(2). (Doc. 17 at 4.) Magistrate Judge Foster also stated that even if the Court were to find Respondent's interpretation of the applicable statutes persuasive, she would recommend granting the petition in this case. (Id.)

> The Order to Show Cause explicitly directed Respondents to file an answer to Marisol's Petition and include "[s]uch affidavits and exhibits as are needed to establish the lawfulness . . . of Petitioner's detention in light of the issues raised in the habeas petition." (ECF No. 3 at 1.) They have not even attempted to meet this burden. Respondents' brief consists entirely of a one-paragraph statement citing to another pending case, with no reference whatsoever to the facts of this case. They have proffered no affidavits, declarations or exhibits related to Marisol's arrival in the United States, subsequent immigration proceedings, arrest or detention. The entirety of their discussion of the facts consists of the statement that "[t]his petition raises legal and factual issues similar to those in prior habeas petitions." (ECF No. 8.) But they offer no grounds for the conclusory statement that it is "similar" to other petitions, and do not point to anything in the record that suggests her detention is lawful.
>
> . . .
>
> The Court anticipates Respondents will object to this recommendation on the ground that this matter is now moot. The problem with that argument is that, as of this filing, Respondents have failed to produce any evidence to support that contention. . . . Respondents have failed to meet [the Court's deadline to produce internal documentation concerning the release], and despite follow-up email communications with the Court, they still have not provided supporting documents as ordered.

(Id. at 4-5 (first two sets of brackets in original).) Also on February 10, 2026, Magistrate Judge Foster granted Petitioner's motion for expedited discovery.

As predicted, Respondents filed objections to the R&R, arguing that the petition was moot. (Doc. 22 at 1.) They also produced Petitioner's detention record which only showed that Petitioner was returned to Minnesota at 11:15 p.m. on February 7, 2026 and was released at 1:10 a.m. on February 8. (Doc. 22-1.) This document was not responsive to the Court's order.

On February 11, 2026, Counsel filed a status report explaining to the Court that although Petitioner had been released from custody on February 8, since then, she had been required to attend two Intensive Supervision Appearance Program ("ISAP") appointments. (Doc. 19.) Counsel stated that a third consecutive appointment was scheduled on February 12; that these constant appointments made it impossible for Petitioner to return to work or to care for her grandchild; and that because she had been seized at a regular ISAP appointment, she was afraid she would be re-detained. (Id.) Counsel also noted that when Petitioner was released, ICE failed to return her personal effects, including her passport. (Id.) In response, the Court enjoined Respondents from taking Petitioner into custody or removing her from Minnesota and ordered

them to remove any conditions on her release and to return her belongings by noon the next day. (Doc. 21.) Respondents returned all of Petitioner's belongings except her passport. (Doc. 24 at 1.) An agent told Counsel that he could submit a FOIA request for the passport. (Id.)

On February 18, 2026, the Court adopted Magistrate Judge Foster's R&R and ordered Respondents to conduct a meaningful search for Petitioner's passport or appear before the Court to show cause why they should not be held in contempt for failing to comply with the Court's previous order to return Petitioner's belongings. (Doc. 27 at 5, 7-8.) After this order, Respondents located the passport, which Counsel retrieved on February 19. (Doc. 31.)

On March 25, 2026, the Eighth Circuit issued its opinion in Avila v. Bondi, which was pending before the Eighth Circuit Court of Appeals during the parties' litigation of this case. Avila holds that petitioners such as Petitioner here are subject to the mandatory detention provisions of 8 U.S.C. § 1225(b)(2). 170 F.4th 1128, 1136-37 (8th Cir. 2026).[2]

[2] A circuit split has emerged on this issue. The Fifth and Eighth Circuits hold that § 1225(b)(2) mandates detention for noncitizens who are arrested in the interior of the country after being here for months or even years. See Avila, 170 F.4th at 1136-37; Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026). The Second, Sixth, Tenth, and Eleventh Circuits hold that these noncitizens are

## III. DISCUSSION

The EAJA provides the following:

> Except as otherwise specifically provided by statute, a court shall award to a **prevailing party** other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, **unless the court finds that the position of the United States was substantially justified** or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

### A. Merits

There is no question that Petitioner was the prevailing party because she was "the party ultimately prevailing when the matter [was] finally set at rest." Lackey v. Stinnie, 604 U.S. 192, 200 (2025) (quoting Black's Law Dictionary). Instead, Respondents oppose the instant motion on the ground that their position

---

subject to discretionary detention under § 1226(a). See Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026); Santillan Quiroz v. Mullin, No. 26-6019, 2026 WL 1876709 (10th Cir. June 30, 2026); Hernandez Alvarez v. Warden, 175 F.4th 1258 (11th Cir. 2026). On October 1, 2026, the Supreme Court granted cert. on the issue. Rhoney v. Barbosa da Cunha, 26-104, --- S. Ct. ---, 2026 WL 2942994 (Mem.). No date has been set for oral argument.

was substantially justified based on emerging minority trends at the time and now based on Avila. (Doc. 39.)

"Substantially justified" means that Respondents' position had "a reasonable basis in law and fact." United States v. Hurt, 676 F.3d 649, 652 (8th Cir. 2012) (quoting Bah v. Cangemi, 548 F.3d 680, 683-84 (8th Cir. 2008)). Therefore, an incorrect position can be substantially justified as long as "a reasonable person could think it correct." Bah, 548 F.3d at 683 (quoting Pierce v. Underwood, 487 U.S. 552, 566 n.2 (1988)). "The Government may also be justified in litigating a legal question that is unsettled in this circuit." Id. at 684.

In this case, the Court finds that Respondents' position was not substantially justified. The Court's determination has nothing to do with the number of judges in the District who embraced Petitioner's or Respondents' position on the § 1225 vs. § 1226 issue at the time. Rather, the Court's determination is based on the fact that it adopted the R&R, which pointed out that while Respondents noted that the petition raised legal and factual issues similar to those in prior habeas petitions, with no comparison to the actual facts of this case and no documents to support their arguments—documents that are almost always in the exclusive possession of Respondents—the argument was

meaningless. The same is true for Respondents' statement that it "asserts all arguments raised by the Government in Avila." (Doc. 8 at 1.) Legal argument requires both law and fact.

Even if the Court had found Respondents' position substantially justified, it would still grant Petitioner's motion in this case. The underlying legal basis for Petitioner's detention does not end the Court's inquiry. Rather, "[t]he EAJA requires courts to consider the government's conduct leading up to the litigation in addition to its subsequent conduct." Hilario C.D. v. Blanche, Case No. 26-cv-738 (NEB/DTS), Docket No. 21, slip opinion, at 4 (quoting Bah, 548 F.3d at 684). Here, although Respondents released Petitioner, they did so at 1:00 a.m. on a winter night. Respondents then ignored the Court's order requiring them to explain whether she was given use of a phone, transportation, or appropriate clothing. She was also released without any of her personal possessions, which required Counsel to draft an additional motion. Respondents' suggestion that Petitioner could obtain her own passport only by filing a FOIA request was particularly galling. Once Respondents released Petitioner, they required her to attend almost daily check-ins, which disrupted her life and terrified her.

Respondents' conduct led the Court to state that during this case, "Respondents have been willfully blind to the relief Petitioner seeks." (Doc. 27 at 4.)

A "basic proposition" of our justice system is that "all orders and judgments of the courts must be complied with promptly." Hilario C.D., Case No. 26-cv-738, Docket No. 21, at 5 (quotation omitted). Here, Respondents' failure to follow Court orders with no explanation for noncompliance, lacks any reasonable basis in law or fact. Id.; Adriana M.Y.M. v. Easterwood, No. 26-CV-213 (JWB/JFD), 2026 WL 1786122, at *2 (D. Minn. June 22, 2026) (granting EAJA fees based on additional briefing required to address "rapid transfer of Petitioner and the uncertainty regarding her location"). The Court agrees with the Honorable Nancy Brasel that denying fees in a case in which Counsel spent hours responding to Respondents' failure to comply with Court orders or to explain their actions, "would create exactly the financial disincentive the EAJA was designed to alleviate, discouraging attorneys from providing support to clients like [Petitioner]." Hilario C.D., Case No. 26-cv-738, Docket No. 21 at 5.

**B. Fee Request**

"[F]ees and other expenses . . . shall be based upon prevailing market rates" for attorneys' fees, but not "in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a

higher fee." 28 U.S.C. § 2412(d)(2)(A). Petitioner seeks an upward adjustment to a rate of $350 per hour in light of the "specialized immigration and detention expertise beyond ordinary legal competence" Counsel needed during a time crunch with the "pressing threat of relocation and deportation" hanging over the case. (Doc. 35 at 6 (citing Nadarajah v. Holder, 2009 WL 1588678 (9th Cir. 2009)).)

For the reasons cited by Petitioner, an upward adjustment is reasonable here. The Court notes that the $125/hour fee cap was established in 1996 when the cost of living was lower. See Adriana M.Y.M., 2026 WL 1786122, at *2.

The Court also finds that the number of hours requested, 12.7 (of which the majority are attributable to Respondents' conduct outlined above), to be reasonable. Using an hourly fee of $350 x 12.7, the total fee award is $4,445.00.

## IV. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Petitioner's Motion for Attorneys' Fees and Costs Pursuant to the Equal Access to Justice Act **[Doc. 34]** is **GRANTED**; and

2. Petitioner is awarded $4,445.00 in reasonable attorney fees under the EAJA, 28 U.S.C. § 2412(d).

Dated: October 16, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court